"The petition in this case set forth four claims, two 'breach’ claims (counts I and II) and two claims 'under the contract’ (counts III and IV). Each count sought to recover precisely the same amount ($194,093.96). The second set of claims (i.e. those 'under the contract’) were litigated first. They came twice before the Armed Services Board of Contract Appeals and twice before this court. See 203 Ct. Cl. 732 (Order of January 4, 1974); 211 Ct. Cl. 207, 543 F.2d 125 (Oct. 1976). In the latter decision we decided that the company had no claim 'under the contract’ and dismissed counts III and IV of the petition. The facts are fully stated in the opinion reported at 211 Ct. Cl. 207, 543 F.2d 125.
"Thereafter plaintiff indicated that it wished to proceed on the 'breach’ claims (counts I and II) and requested a trial de novo in this court on those claims. Defendant then moved for summary judgment dismissing those counts, asserting that the court’s decision on counts III and IV had already determined, adversely to plaintiff, all the issues relevant to the 'breach’ claims and that there were no separate or independent 'breach’ issues left to be tried.
"Two settled propositions are pertinent. One is that a contractor, after having pursued his administrative remedy 'under the contract,’ cannot maintain a 'breach’ action which seeks no further or different relief but simply affixes the label 'breach’ to what is essentially the same claim. See, e.g., ITT Gilfillan, Inc. v. United States, 200 Ct. Cl. 367, 383-84, 471 F.2d 1382, 1392 (1973); Teitelbaum v. United States, 198 Ct. Cl. 150, 176-77, 458 F.2d 72, 87-88 (1972); L.W. Foster Sportswear Co., 186 Ct. Cl. 499, 502, 405 F.2d 1285, 1287 (1969). The other, related principle is that, even where the 'breach’ claim does differ from that 'under *445 the contract,’ facts properly found and issues properly decided in the litigation 'under the contract’ are entitled to finality and cannot be relitigated. See United States v. Utah Constr. & Mining Co., 384 U.S. 394, 419 (1960); Koppers/Clough v. United States, 201 Ct. Cl. 344, 364-65 (1973); Astro-Space Labs, Inc. v. United States, 200 Ct. Cl. 282, 311, 470 F.2d 1003, 1019 (1972).
"Both of these rules apply here. We are unable to discern any real difference between the contractor’s 'breach’ claims and those 'under the contract’ which the court has already rejected. The petition contains 23 paragraphs of 'Preliminary and General Allegations’ — factual allegations — all of which are incorporated into both the set of 'breach’ counts and the set of 'under the contract’ claims; in addition, the 'contract’ claims include and incorporate the allegations of the 'breach’ claims (except for conclusory allegations). The gist of both sets of claims[1] is that the government specifications were defective and impossible of fulfillment — and the Government so knew but nevertheless caused the plaintiff to perform extra work in order to meet the specifications. The same amount of money is demanded in each count. In sum, the difference between the two sets of claims appears to us to be a 'mere exercise of semantics’ which the Supreme Court rejected as a permissible means of avoiding the disputes-clause mechanism when it said that 'any claim, whether within or without the disputes clause, can be couched in terms of breach of contract language.’ United States v. Utah Constr. & Mining Co., supra, 384 U.S. at 419.
"But even if there is some substantive difference between the two sets of claims, the decisions already made (including the administrative findings upheld by this court) preclude further litigation of the 'breach’ claims. Plaintiff now urges, under the rubric of 'breach’ claims, that (i) the whole contract was void for lack of definite, objective acceptance criteria for the items to be supplied, and (ii) the defendant’s change in the acceptance criteria was a cardinal change beyond the scope of the disputes clause. These theories appear to emerge now for the first time in this litigation, but, even if we consider them as if somehow embodied in the petition, we cannot allow them to be pursued at this stage.
*446 "The prior decision, reported at 211 Ct. Cl. 207, 543 F.2d 125, upheld the board’s findings, express or implied, that (a) plaintiff knew or should have known that it might have to use the advisory specifications; Ob) the defendant did not mislead plaintiff into incurring extra costs in an impossible task; (c) at first, plaintiff deliberately chose not to use the advisories but insisted on using its own less costly techniques; (d) later, plaintiff did choose on its own to use the advisories; and (e) plaintiff knew, before the start of actual production, that the performance requirements had been relaxed and that the Government would accept units produced in accordance with the advisories ('even if such were not capable of satisfying the original or modified ballistic requirements of the contract’), and for that reason plaintiff elected to use the advisories. These findings necessarily add up to the conclusion that the acceptance criteria, as employed by the defendant and understood by the plaintiff, were not so indefinite as to void the contract.
"As for the allegation that the Government made a cardinal change, this court has expressly held that what occurred was a constructive change 'under the contract.’ See 211 Ct. Cl. at 216-20, 543 F.2d at 131, 133. In view of that holding that the dispute came 'under the contract,’ plaintiff is not now free to urge upon the court that the change was not 'under the contract’ but a cardinal change outside the disputes-mechanism.
"it is therefore ordered and concluded, without oral argument, that defendant’s motion for summary judgment is granted and counts I and II of the petition are dismissed.[2]”

 The four counts are summarized at 211 Ct. Cl. at 211-12, 543 F.2d at 127-28.

 Since counts III and IV of the petition have already been dismissed, our disposition means that the entire petition is dismissed.