MARQUARDT COMPANY, Appellant,

v.

The UNITED STATES, Appellee.

Appeal No. 86–1546.

United States Court of Appeals,
Federal Circuit.

July 8, 1987.

Melvin Riske, Fried, Frank, Harris, Shriver & Jacobson, Washington, D.C., argued for appellant. With him on the brief were Eric J. Zahler and Garry S. Grossman.

Ronald A. Schechter, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for appellee. With him on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and M. Susan Burnett, Asst. Director. Also on the brief was Ralph Guderian, Defense Logistics Agency, of counsel.

Before SMITH, Circuit Judge,
MILLER, Senior Circuit Judge, and
BISSEL, Circuit Judge.

JACK R. MILLER, Senior Circuit Judge.

This appeal is from the decision of the Armed Services Board of Contract Appeals (board) granting summary judgment in fa-

vor of an administrative contracting officer's determination that the sale of a Government contractor's stock by one third party to another does not entitle the contractor (1) to writeup its depreciable assets to reflect the price paid for the stock and (2) to charge depreciation thereon to the Government. Technically, the appeal is also from the board's decision denying appellant's motion for reconsideration. We affirm.

## Background

All of the outstanding stock of the Marquardt Company (Marquardt), a Government contractor engaged in "cost plus" contracting, was purchased in August 1983 by ISC Electronics, Inc. (ISC) from CCI Corporation (CCI) for $43,500,000 and 600,000 shares of ISC stock. Before the acquisition, Marquardt was a wholly-owned subsidiary of CCI; afterwards, Marquardt was a wholly-owned subsidiary of ISC. Marquardt accounted for the acquisition (using the "purchase method of accounting") by allocating the price ISC paid for the stock among Marquardt's assets. It then informed the Government that it had revised its asset values and would be adjusting its schedule of indirect costs under existing and future Government contracts to reflect attendant increases in depreciation and "facilities capital cost of money."

An administrative contracting officer (ACO) disallowed the increases, largely because Marquardt had asserted prior to the acquisition that a novation agreement should not be required.[1] The ACO stated that, because Marquardt remained autonomous, it's assets should be depreciated on the basis of historical cost less residual value in accordance with Defense Acquisition Regulation (DAR) 15–205.9(a), and that the transaction did not meet the requirements of DAR 15–205.9(h) for depreciation based on price. The ACO also stated that the amount of write-up claimed was unreasonable and that the resulting cost increases were unallowable because the stock acquisition was not required for performance of a Government contract. In the alternative, the ACO indicated that a novation agreement would be necessary in view of the stepped-up basis pursuant to DAR 26–402(b)(iii).[2] The ACO's decision was made final, and Marquardt appealed to the board.

By letter dated October 10, 1984, the board adopted the parties' suggestion that the appeal be initially limited to "the primary issue only, i.e. was the accounting method used by the appellant for the valuation of assets proper." Accordingly, Marquardt filed a motion for partial summary judgment, and the Government filed a cross-motion for summary judgment.

In support of its motion, Marquardt argued that all material facts relating to the issue at hand were undisputed and that partial summary judgment was appropriate because generally accepted accounting principles (GAAP) (a relevant "factor" in determining allowability of specific costs under DAR 15–201.2 and Federal Acquisition Regulation (FAR) 31.201–2) permit Marquardt's use of the purchase method of accounting. According to Marquardt, the American Institute of Certified Public Accountants' (AICPA's) Accounting Principles Board Opinion No. 16 (APB 16) specifies that under GAAP the purchase method is used when a "business combination" is accomplished primarily through a cash purchase.[3]

1. Novation agreements, often required when significant changes in contract ownership occur, generally provide that as to existing contracts, the Government will not bear "any costs, taxes or other expenses, or any increases therein, directly or indirectly" that it would not have been required to bear had there been no assignment, conveyance, or transfer. Department of Defense DCAA Contract Audit Manual, ¶ 7-1704(d) (1984). *See* note 5, *infra.*

2. DAR 26–402(b)(iii) was added to the DARs to illustrate that novation agreements may be required when "the transfer of ownership of a contractor through a stock purchase transaction" might "significantly affect the Government's rights and interests under existing ... contracts." Fed.Reg., Vol. 49, No. 127, p. 26925 (June 29, 1984). Apparently, this provision was misnumbered and should have been added as 26–402(a)(iv).

3. As defined by the first paragraph of APB 16, "[a] business combination occurs when a corporation and one or more ... businesses are brought together into one accounting entity.

In response, the Government asserted that the purchase method of accounting does not apply in Marquardt's situation, that no "business combination" under APB 16 had occurred, that use of the purchase method of accounting in these circumstances would not be in accordance with GAAP, and that the costs claimed were, in any event, unallowable under DAR 15–201.2.[4] The Government relied on language in AICPA's Accounting Research Bulletin No. 51 to distinguish a "business combination" from a "consolidated financial statement" (used here) in which the statements (but not the accounts) of a parent and its subsidiaries are combined. According to the Government, no business combination occurred because Marquardt "remained as it was" and its accounts were not transferred to a new "single entity [carrying] on the activities of the previously separate, independent enterprises," per APB 16.

In addition, the Government pointed out that the resultant costs were unallowable because depreciation must be based on actual cost less residual value, the costs claimed were unreasonable in amount, and they were not required for performance of a Government contract. (The Government also relied on DARs 15–201.3, –201.4, –205.-9, –205.17, –205.22, and –205.23, essentially reiterating the ACO's position).

## The Board's Action

The board granted the Government's motion for summary judgment and denied Marquardt's motion, holding that APB 16 does not apply to the ISC/Marquardt stock purchase. It rejected Marquardt's contention that a business combination had occurred, finding that Marquardt had retained its legal identity and that no single accounting entity emerged to carry on the activities of previously separate, independent enterprises; instead, Marquardt remained solely responsible for performing its Government contracts.

Regarding the costs involved in use of the purchase method of accounting, the board stated that these were unallowable because they were not incurred by Marquardt; that ISC—not Marquardt—incurred the costs; and that if ISC "is to recover the purchase cost of acquiring Marquardt it can only do so under its own Government and commercial contracts." The board added that the costs were not allocable to Marquardt's contracts because they were not incurred specifically for the benefit of a Government contract, and no benefit to Marquardt's contracts resulted from the acquisition.

## The Motion for Reconsideration

Marquardt moved for reconsideration, arguing that the board's general statements regarding the allowability and allocability of costs went far beyond the limited issue of whether Marquardt's use of the purchase method was appropriate, thus depriving Marquardt of an opportunity to address these issues. In addition, it argued that summary judgment was inappropriate because of a genuine dispute over material issues of fact, including whether Marquardt's contracts benefited from the acquisition. It was also argued that the board erred, as a matter of law, in concluding that Marquardt's write-up of assets was improper.

Marquardt further argued that the board's decision was confusing and inconsistent with "full costing" principles and regulations that recognize and permit allocation of home office expenses attributable to particular cost objectives; that if, as the board suggested, ISC's books (and not Marquardt's) were to account for the acquisition, the added depreciation and facilities capital costs would be identified with Marquardt's cost objectives and inevitably would be allocated to Marquardt's contracts as a home office expense; and that whether it was Marquardt or ISC that writes up the assets was of little consequence.

---

The single entity carries on the activities of the previously separate, independent enterprises."

**4.** DAR 15–201.2 enumerates "Factors Affecting Allowability of Costs", including: (i) reasonable-

ness; (ii) allocability; (iii) Cost Accounting Standards and/or GAAP; and (iv) contractual or other limitations.

Marquardt pointed out that relevant accounting literature, including Securities and Exchange Commission (SEC) Staff Accounting Bulletin No. 54 (SAB 54) and Internal Revenue Code Section 338 (IRC § 338), requires an *acquired* company's books to reflect the price paid for its assets when a stock acquisition occurs. Because ISC filed a consolidated tax return and elected IRC § 338 treatment for Marquardt's assets, it was said that, "[t]here is no rational basis to deny Marquardt the right to apply the same practice in accounting for its Government contracts...."

The board rejected Marquardt's request for reconsideration in a supplemental opinion issued June 2, 1986. As to alleged issues of fact precluding summary judgment, the board acknowledged some factual errors in its earlier opinion, but said that these errors were immaterial. It reasoned:

> As we recently stated in *R & D Associates*, (ASBCA Nos. 30738 and 30750, decided 7 May 1986): "it is axiomatic that 'costs' chargeable either directly or indirectly to Government contracts must actually be incurred." The fundamental undisputed fact governing the outcome of this appeal is that Marquardt, the separate legal entity solely responsible for the performance of its Government contracts, and which remained completely passive in the transaction involving the purchase of its stock, incurred no cost with respect to performance of its Government contracts as the result of the purchase of its stock by [ISC].
>
>    ....
>
>    ... [W]e need not have even considered APB 16 in reaching our decision since that decision was mandated by DAR Section XV.... Under DAR 15–201.2, generally accepted accounting principles are applicable when appropriate to the particular circumstances. This standard has not been satisfied where, as here, the threshold requirement of cost incurrence has not been met.

Bd. op. at 5.

## Opinion

### 1. *Due Process Issue*

■ We have concluded that the board did not deprive Marquardt of due process by addressing issues beyond the scope of its October 10, 1984 letter. The parties are at odds over the Government's disallowance of Marquardt's write-up of its assets in the amount of $41,759,652 for the purpose of charging depreciation thereon to the Government as a part of overhead. The record shows that the parties considered that the issue of whether revaluation was "proper" included the related issue of whether revaluation would contravene GAAP or Government standards and regulations relating to cost allowability and allocability. The Government's reply to Marquardt's motion for partial summary judgment and Marquardt's memorandum in opposition to the Government's cross-motion clearly (and without objection) addressed issues beyond the narrow scope that Marquardt now urges.

We are satisfied that the parties knew or should have known that the question of whether the revaluation was proper was to be resolved on one or more of several grounds being considered, including those ultimately addressed by the board. Therefore, we reject Marquardt's suggestion that it was "ambushed" by the scope of the board's decision.

### 2. *Threshold Requirement of Cost Incurrence*

■ As to whether a genuine dispute over material issues of fact precluded the award of summary judgment, all doubt over the presence or absence of factual issues must be resolved in favor of Marquardt. *See, United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Although Marquardt's earlier cross-motion for partial summary judgment might make suspect its present assertion that facts are in dispute, the record must be reviewed for evidentiary conflicts, recognizing that mere denials or conclusory statements are insufficient to support reversal. *See, Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987).

Although the board's first opinion addressed APB 16 and GAAP, its reliance on

those authorities was discounted in its subsequent opinion where it stated that "we need not have even considered APB 16 in reaching our decision since that decision was mandated by DAR Section XV."

In its second opinion, the board said: Marquardt now seeks to use the purchase of its stock by [ISC] as a basis for converting an expenditure by a third party into a "cost" incurred by itself. In short, its [sic] seeks to create something out of nothing and charge it against its Government contracts.

... Under DAR 15–201.2, generally accepted accounting principles are applicable when appropriate to the particular circumstances. This standard has not been satisfied where, as here, the threshold requirement of cost incurrence has not been met.

Bd. op. at 5. The board concluded that Marquardt had incurred none of the disputed costs, that only costs incurred by Marquardt could be charged to Marquardt's contracts, and that Marquardt's write-up of assets was, therefore, improper.

Because the record establishes beyond dispute that ISC purchased Marquardt's stock and that ISC, not Marquardt, incurred the acquisition costs, the facts essential to the board's holding *were* established. Thus, summary judgment was appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, ——, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

### 3. *Novation Issue*

Marquardt asserts that the accounting profession, Congress, and the SEC (as illustrated by APB 16, IRC § 338, and SAB 54, respectively) recognize that, for certain purposes, the acquisition of a corporation's stock is equivalent to the acquisition of its assets. However, had ISC purchased Marquardt's assets, and had the Government been willing to recognize ISC as a "successor in interest" on Marquardt's existing contracts (*see* DAR 26–402), ISC would have been required to execute a novation agreement on those contracts that would preclude it from charging depreciation on the stepped-up basis that Marquardt seeks. *Id.; see Sundstrand Turbo Division v. United States*, 182 Ct.Cl. 31, 389 F.2d 406 (1968) (depreciation is allowable based on contractor's book value, not on stepped-up basis of successor in interest).

Marquardt argues that a novation agreement could not be required here because the stock acquisition did not cause its contracts to become subject to one of the Anti-Assignment Acts (41 U.S.C. § 15; ASBCA Rule 4 File, Tab 5). The absence of a novation agreement is said to entitle Marquardt to costs that would not be recognized if a successor in interest had assumed responsibility for the contracts. Thus, Marquardt seeks to accomplish through a stock purchase what could not be accomplished through a purchase of assets.[5]

Accordingly, we are persuaded that in Marquardt's situation a novation agreement would merely formalize what is already implicit, namely: Cost of depreciation relating to its existing contracts would continue to be allowed based on Mar-

---

5. The protection afforded by a novation agreement stems largely from the terms of the original contract(s). Novation agreements often provide that:

[T]he Government shall not be obligated to pay ... any costs ... or any increases therein ... other than those which the Government ... would have been obligated to pay or reimburse *under the terms of the Contracts....* (emphasis supplied.)

In construing this provision, courts and administrative boards have repeatedly held that "costs" resulting from a write-up of assets after the acquisition of a contractor are not recoverable by a successor in interest because such costs could not be recovered by the original contrac-

tor. *See Sundstrand Turbo, supra; LTV Aerospace v. United States*, 192 Ct.Cl. 191, 425 F.2d 1237 (1970) (depreciation under the contract is based on original contractor's book value, not on stepped-up basis of acquiring corporation); *ITT Gilfillan, Inc. v. United States*, 200 Ct.Cl. 367, 378, 382, 471 F.2d 1382, 1386, 1389 (1973) ("cost increases due to accounting changes or evaluations unrelated to substantive or actual changes" are not costs that "the Government would have had to pay" its original contractor). Marquardt ignores the implication of these decisions by our predecessor court that its contracts do not recognize costs attributable to its acquisition.

quardt's (and not ISC's) historical costs in the event of acquisition.

### 4. *Government Regulations Prevail over GAAP*

Marquardt's major argument has to do with the Government's disallowance of its write-up of its assets in the amount of $41,759,652 for the purpose of charging depreciation thereon to the Government as a part of overhead. It is contended that the purchase method of accounting permits, indeed requires, such write-up notwithstanding that Marquardt had previously charged such depreciation to the Government.

■ Marquardt says it is well established that, in the absence of an express regulation to the contrary, accounting practices recognized under Generally Accepted Accounting Principles (GAAP) apply in determining the propriety of an accounting practice for Government contract purposes. However, the Government correctly states "it is not enough simply to assert that GAAP plays a role in Government cost accounting. In each instance in which a contractor asserts that GAAP applies, it is necessary to determine whether the application of GAAP is consistent with the terms of the governing regulations." Thus, DAR 15–201.2 lists factors (affecting allowability of costs) to be considered in determining the allowability of individual items of cost; and the first factor listed is "reasonableness." Further, DAR 15–201.-3(iii) provides that, in determining the reasonableness of a given cost, consideration shall be given to "the action that a prudent business man would take in the circumstances, considering his responsibilities to the owners of the business, his employees, his customers, *the Government* and *the public at large.* (Emphasis supplied.) We are satisfied that appellant's write-up in the amount of $41,759,652 does not accord with the prudence required in dealing with the

Government and the public at large (the taxpayers) and does not meet the standard of reasonableness established by the regulations.[6]

Appellant argues that Opinions of the Accounting Principles Board (APB 16)[7] demonstrate "established practice within the accounting profession" in support of its position. However, we agree with the Government that appellant misreads this and other citations in failing to recognize that principles applicable to an *acquiring* corporation are not necessarily applicable to an *acquired* corporation. APB 16, paragraph 67(c), states that "[a]n asset acquired by issuing shares of stock of the acquiring corporation is recorded [obviously on the books of the acquiring corporation] at the fair value of the [asset]." Current accounting texts, of which we take judicial notice,[8] further establish the dichotomy between acquired and acquiring corporations. Thus, in Welsch, Anthony, and Short, FUNDAMENTALS OF FINANCIAL ACCOUNTING (4th ed. 1984), 638–57, it is stated:

> [W]hen a company has a controlling interest in another company, the financial statements for each company often will be combined into a single set of financial statements by an accounting process called **consolidation.** . . .
>
> . . . .
>
> . . . Because the parent and subsidiary are viewed as a single economic entity, the parent company (but not the subsidiary) is required to prepare **consolidated financial statements.** . . .
>
> . . . .
>
> Consolidated statements affect only the reporting by the parent company of the financial results of the parent and its subsidiaries. The accounting for each subsidiary company is unaffected. . . .
>
> . . . .

---

6. Earlier in this opinion we observed that appellant failed to meet the requirement that it actually incur the cost it is claiming. DAR 15–201.1 and FAR 31.201–1; *see also Monterey Life Systems, Inc. v. United States,* 635 F.2d 821 (Ct.Cl. 1980).

7. The Board was established in 1959 and discontinued in 1973.

8. *See Urbanek v. United States,* 731 F.2d 870, 873 n. 3 (Fed.Cir.1984).

... [P]urchase by Company P [parent] will have no effect on the accounting and reporting by the subsidiary Company S....

....

[F]or consolidation purposes when the purchase method is used, the **market values** at date of acquisition of the subsidiary's assets are added on an item-by-item basis to the **book values** of the parent, Company P.

....

... The acquisition of a controlling interest **does not** affect the accounting and reporting of the subsidiary companies (the subsidiary companies do not prepare consolidated statements).

Anthony and Reece, ACCOUNTING PRINCIPLES (5th ed. 1983), explain at 268–69:

The underlying premise of purchase accounting is that instead of a "marriage" of A and B, A is buying the net assets of B. In accordance with the cost concept, the net assets of B go onto A's balance sheet at the amount paid for them....

This treatment involves two steps. First, B's tangible assets are revalued to their *fair* value....

Second, after the revaluation of B's tangible assets, any excess of the purchase price over the total amount of B's revalued tangible net assets is shown on the consolidated balance sheet as an asset called goodwill. [Footnote omitted.]

Larson and Pyle, FINANCIAL ACCOUNTING (3d ed. 1986), state as follows at 523:

When a business is operated as a parent company with subsidiaries, separate accounting records are kept for each corporation. Also, from a *legal* viewpoint, the parent and each subsidiary are separate entities with all the rights, duties,

and responsibilities of a separate corporation. [Emphasis supplied.]

The Government points out that the Defense Contract Audit Agency (DCAA) has the primary responsibility for providing accounting and financial advice on Department of Defense contracts governed by Defense Acquisition Regulations, 32 C.F.R. § 357.2(a).[9] The Manual of the Agency, ¶ 7–1702, provides, *inter alia*:

a. A business combination occurs when a corporation and one or more incorporated or unincorporated firms are brought together under common control, generally into a single organization. The single organization carries on the activities of the previously separate, independent enterprises.

Significantly, as the Government emphasizes, there was no "single organization" carrying on the activities of both appellant and ISC, because appellant remained solely responsible for performance of its Government contracts.

The Agency Manual, ¶ 7–1707.1(a)(2), further provides:

If a business combination is achieved by purchase of stock, no writeup of assets is permissible on the acquired corporation's accounting records unless the acquiring corporation elects a liquidation of the acquired corporation.

Therefore, if a "business combination" were involved, absence of liquidation would preclude a write-up of appellant's assets. Moreover, even if there had been a "business combination" *and* a liquidation, tax on the profit from the deemed "sale" of the liquidated assets [10] would provide protection of the revenue noticeably absent under appellant's approach.

Finally, appellant argues that "it is widely recognized for financial reporting purposes [citing SAB 54] and for tax purposes [citing IRC § 338] the assets [of a subsidi-

---

**9.** The regulations of the Department of Defense are presumptively valid, as are the DCAA interpretations. *See United States v. H.R. Morgan, Inc.,* 542 F.2d 262, 266 (5th Cir.1976).

**10.** Section 338(a)(1) of the Internal Revenue Code (IRC) provides that if a purchasing corporation makes an election, then the target corpo-

ration shall be treated as having sold all of its assets at fair market value; and section 338(h) refers to "tax attributable to the sale described in subsection (a)(1)." *See* S. Conf. Rep. No. 530, 97th Cong., 2d Sess. at 536–37 (1982), U.S.Code Cong & Admin.News 1982, p. 781.

ary] must be reflected and treated at their full acquisition cost." As to financial reporting requirements of the SEC and other Government agencies, it is obvious that the requirements of one agency are not necessarily relevant to, much less binding on, another. *See, Old Colony Railroad v. Commissioner of Internal Revenue,* 284 U.S. 552, 562, 52 S.Ct. 211, 76 L.Ed. 484 (1932) ("rules of accounting enforced upon a carrier by the Interstate Commerce Commission are not binding upon the Commissioner [of Internal Revenue]"). As to Section 338, IRC, appellant argues:

> IRC § 338 permits a stepped-up basis in Marquardt's assets, which will be reflected on Marquardt's own books. There is no rational basis to deny Marquardt the right to apply the same practice in accounting for its Government contracts, and the Board's decision below has failed to provide any basis for such a distinction. To require a liquidation of the acquired corporation in these circumstances is to require a form that has no substantive purpose.... Indeed, ISC relied upon IRC § 338 in deciding to make a stock rather than an asset purchase.

Of course, the answer is that the Government is exercising its responsibility to see to it that its contracting business is conducted efficiently, and the "rational basis," which appellant ignores, is avoidance of a duplication in overhead costs charged to the Government in the amount of $41,759,-652.[11]

Moreover, we are persuaded that Congress, through its oversight committees and their highly professional staffs, would have been familiar with any need to apply the provisions of section 338 to overhead costs of Government contracts. Congressional inaction in this area can hardly be cited by appellant as support for its reliance on section 338 in making a stock rather than an asset purchase.

In view of all the foregoing, we hold that the board correctly disallowed appellant's write-up of its assets for the purpose of charging depreciation thereon to the Government as a part of overhead.[12]

The decision of the board granting the Government's motion for summary judgment and denying appellant's motion for partial summary judgment is *affirmed.*

AFFIRMED

BISSELL, Circuit Judge, dissenting.

I am compelled to dissent. Marquardt Company (Marquardt), in trying to avoid the consequences of a novation agreement, has been hoist by its own petard—with the help of the Armed Services Board of Contract Appeals (Board) and this court. Unfortunately, the majority's holding will not decrease the cost of government contracts, but will foist upon the taxpayers of this country an increase in costs through payment of additional and unnecessary legal and accounting costs.

There is absolutely no difference in the economic realities of the transaction in this case and the transaction in *Gould Defense Systems, Inc.,* ASBCA No. 24881, 83–2 BCA (CCH) ¶ 16,676. Yet in *Gould* the Board found that "the Government allows the step-up of tangible capital assets to fair value at the time of business acquisitions properly accounted for under the purchase method [of accounting], and accepts depreciation on a stepped-up value of the tangible capital assets as an allowable cost for Government contract pricing purposes." *Id.* at 82,960.

The government contends that *Gould* is distinguishable from this case because in *Gould* the Board was faced with a true business combination that resulted from the merger of two corporations. Hence, the government argues, that in *Gould* the purchaser was properly allowed to record

---

**11.** We note that Treasury Department Regulations under section 338 involve "recapture gain," such as depreciation and tax benefits such as investment tax credit.

**12.** With respect to Contract No. N00014–84–C–2052, awarded Marquardt in December of 1983

after ISC had acquired Marquardt's stock, we are satisfied that no acquisition costs are allocable to it because no costs have been shown to be allowable, ISC rather than Marquardt having incurred them.

as its costs on its books the fair market value of the assets it purchased and charge those costs against its government contracts. It should be noted that in *Gould* the Board concluded that this approach was consistent with the DAR and GAAP. *Id.* at 82,972–76.

Had ISC Electronics, Inc. (ISC):

(1) established a shell subsidiary called ISCM,

(2) funded it with $43,500,000 and 600,000 shares of stock,

(3) caused ISCM to distribute the $43,500,000 and 600,000 shares of stock to CCI Corporation (CCI) by approving a merger of Marquardt with ISCM (ISCM being the surviving corporation with its name changed in the merger to Marquardt)

the purchase method of accounting would have been available to Marquardt. The economic realities of my example are that ISC would have paid CCI $43,500,000 and 600,000 shares of stock for Marquardt, the exact same economic situation that occurred in this case and that occurred in *Gould.* For accounting, securities regulation, and now tax purposes, the three transactions are treated identically with a step-up in basis of the acquired assets. Under the majority's opinion the formalities of setting up the shell corporation, followed by a merger with a change in name will have to be continued for the sole purpose of government contracting. Nothing is economically different except that the contractor will incur additional legal and accounting fees, for which I am certain the taxpayers will ultimately pay.

I would remand this case to the Board for determination of what rational basis, if any, exists in federal procurement law for distinguishing between purchases of stock, purchases of assets, and mergers when none exists for the purposes of GAAP, IRS, or SEC accounting. The substance of the transaction, not the form, should govern for all purposes, including the determination of costs incurred for contracts entered into both pre-acquisition and post-acquisition. Such is not the case here.